## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) CLAIRE HOSTERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-976-SLP |
| | ) | |
| (1) CITY OF STILLWATER, OKLAHOMA, | ) | Jury Trial Demanded |
| (2) BRYAN LUGINBILL, | ) | Attorney Lien Claimed |
| (3) CHRISTIAN VANOVER, | ) | |
| (4) RYAN SIMPSON, | ) | |
| (5) ALI CATHER, | ) | |
| (6) GEMMA E. ANDRADE AGUILERA, | ) | |
| (7) RYAN SEXTON, and | ) | |
| (8) ROYCE STEPHENS, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Claire Hosterman ("Ms. Hosterman" or "Plaintiff"), and for her Complaint against the Defendants, alleges and states, as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a resident of Payne County, Oklahoma.

2. Defendant City of Stillwater, Oklahoma ("City") is a municipality located in Payne County, Oklahoma. The City provides and employs the Stillwater Police Department ("SPD").

3. Defendant Bryan Luginbill ("Officer Luginbill") was at all pertinent times, an officer in the Stillwater Police Department ("SPD"), employed by Defendant City of Stillwater. At all pertinent times, Officer Luginbill was acting within the scope of his employment and

under color of State law. Based upon information and belief, Officer Luginbill was a resident of Payne County, Oklahoma at the time of the incidents described herein. Officer Luginbill committed underlying violations of Ms. Hosterman's constitutional rights, explained below in more detail.

4.  Defendant Ryan Simpson ("Officer Simpson") was at all pertinent times, an officer in the Stillwater Police Department ("SPD"), employed by Defendant City of Stillwater. At all pertinent times, Officer Simpson was acting within the scope of his employment and under color of State law. Based upon information and belief, Officer Simpson was a resident of Payne County, Oklahoma at the time of the incidents described herein. Officer Simpson committed underlying violations of Ms. Hosterman's constitutional rights, explained below in more detail.

5. Defendant Christian Vanover ("DO Vanover") was at all pertinent times, a detention officer working in the Stillwater City Jail ("Jail") employed by Defendant City of Stillwater. At all pertinent times, DO Vanover was acting within the scope of his employment and under color of State law. Based upon information and belief, DO Vanover was a resident of Payne County, Oklahoma at the time of the incidents described herein. DO Vanover committed underlying violations of Ms. Hosterman's constitutional rights, explained below in more detail.

6. Defendant Gemma E. Andrade Aguilera ("DO Andrade Aguilera") was at all pertinent times, a detention officer working in the Stillwater City Jail ("Jail") employed by Defendant City of Stillwater. At all pertinent times, DO Andrade Aguilera was acting within the scope of his employment and under color of State law. Based upon information

and belief, DO Andrade Aguilera was a resident of Payne County, Oklahoma at the time of the incidents described herein. DO Andrade Aguilera committed underlying violations of Ms. Hosterman's constitutional rights, explained below in more detail.

7. Defendant Ali Cather ("DO Cather") was at all pertinent times, a detention officer working in the Stillwater City Jail ("Jail") employed by Defendant City of Stillwater. At all pertinent times, DO Cather was acting within the scope of her employment and under color of State law. Based upon information and belief, DO Cather was a resident of Payne County, Oklahoma at the time of the incidents described herein. DO Cather committed underlying violations of Ms. Hosterman's constitutional rights, explained below in more detail.

8. Defendant Ryan Sexton ("Officer Sexton") was at all pertinent times, an officer in the Stillwater Police Department ("SPD"), employed by Defendant City of Stillwater. At all pertinent times, Officer Sexton was acting within the scope of his employment and under color of State law. Based upon information and belief, Officer Sexton was a resident of Payne County, Oklahoma at the time of the incidents described herein. Officer Sexton committed underlying violations of Ms. Hosterman's constitutional rights, explained below in more detail.

9. Defendant Royce Stephens ("Captain Stephens") was at all pertinent times, a Captain with the Stillwater Police Department ("SPD"), employed by Defendant City of Stillwater. At all pertinent times, Captain Stephens was acting within the scope of his employment and under color of State law. Based upon information and belief, Captain Stephens was a resident of Payne County, Oklahoma at the time of the incidents described

-3-

herein. Captain Stephens committed underlying violations of Ms. Hosterman's constitutional rights, explained below in more detail.

10. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343 to secure protection of and to redress deprivations of rights secured by the Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

11. The jurisdiction of this Court is also invoked under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and the laws of the United States, particularly the Fourth and/or Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

12. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District.

### FACTUAL ALLEGATIONS

13. On or about September 22, 2023, a few minutes after 2:00 a.m., Ms. Hosterman, a student at Oklahoma State University ("OSU") and several of her friends, were walking down the street near 412 S. Washington St., Stillwater.

14. SPD Officers, including Officers Simpson, Luginbill, and McKinney, approached Ms. Hosterman and her friends, as they had received a call that a young woman who purportedly matched the description of one of Ms. Hosterman's friends, had allegedly been acting belligerently at the Union bar on S. Washington Street.

-4-

15. Initially, Officer Luginbill spoke with one male member of the group. Officer Simpson simultaneously spoke with individuals, including Ms. Hosterman and her friend, Caymon Severs ("Mr. Severs"). During that time, Officer McKinney was questioning the young woman who supposedly matched the description of the person they were looking for.

16. After a couple of minutes, Officer Luginbill summoned Ms. Hosterman and Mr. Severs and told them to "move on."

17. Ms. Hosterman asked why she and Mr. Severs were being asked to leave, and Officer Luginbill said, "go away now, or you're going to get arrested."

18. At the time, neither Ms. Hosterman nor Mr. Severs were accused, or reasonably suspected, of committing any crime. They were clearly unarmed, posed no threat to anyone, and were simply waiting on the street while one of their friends was being questioned.

19. Mr. Severs stood slightly behind Ms. Hosterman, and calmly questioned why they were being asked to leave. As Mr. Severs spoke, he innocently gestured his hand in a manner commonly used when people are speaking.

20. While speaking with Officer Luginbill, Mr. Severs used his right hand to point at his other friend who was being questioned. Suddenly, without provocation, Officer Luginbill grabbed Mr. Severs' wrist and pushed him backwards.

21. As Officer Luginbill grabbed Mr. Severs' wrist and pushed him backwards, Severs' arm got tangled with Ms. Hosterman's arms and purse strap.

22. Officers McKinney and Simpson quickly approached Luginbill, Severs, and Hosterman and grabbed Hosterman's arms.

23. As Mr. Severs' arm was looped into Ms. Hosterman's purse strap, she was unfortunately intertwined with Severs and Officer Luginbill.

24. Ms. Hosterman managed to untangle herself from Mr. Severs and Officer McKinney tackled Mr. Severs to the ground.

25. Officer Simpson then forcefully took Ms. Hosterman to the ground.

26. As Ms. Hosterman was seated on the ground, Officer Simpson yanked on her arms while Officer Luginbill violently grabbed her hair and tugged her head towards the payment.

27. Officer Simpson then grabbed Ms. Hosterman and rolled her over to her stomach and handcuffed her.

28. Ms. Hosterman was arrested on suspicion of public intoxication and resisting arrest.

29. Officer Simpson subsequently transported Ms. Hosterman to the Stillwater City Jail ("Jail").

30. In the sally port of the Jail, Officer Simpson thoroughly searched Plaintiff's purse and found no weapons, narcotics, or anything else illegal or unusual.

31. Jailers sat Ms. Hosterman down on a bench in the booking area of the Jail and strapped her down with her hands behind her back.

32. Detention Officer Christian Vanover proceeded to ask Ms. Hosterman "intake" questions, such as her name, address, and date of birth, which she answered.

33. Vanover then asked Ms. Hosterman additional questions related to her medical history and conditions, which she also answered.

34. During this time, Ms. Hosterman, who had never been arrested before, was extremely upset. Between answering intake questions, she openly criticized the detention officers and police officers for their mistreatment of her.

35. Vanover asked Ms. Hosterman if she had ever attempted suicide, and she responded that she had not.

36. Detention Officers Vanover, Ali Cather, and Gemma Andrade Aguilera escorted the handcuffed Ms. Hosterman to "housing unit 18," a small holding cell.

37. They laid Ms. Hosterman down on her stomach on a bench in the cell while she was still handcuffed.

38. Defendant Vanover (male) then held Plaintiff's ankles while Defendants Cather (female) and Andrade Aguilera (female) began forcibly removing Plaintiff's clothing.

39. There was no probable cause or reasonable suspicion to conduct the strip search.

40. Prior to the strip search: 1) Ms. Hosterman's person and purse had already been searched; 2) she had no weapons or narcotics in her possession; 3) she was not arrested on suspicion of possessing or being under the influence of drugs; and 4) she was wearing an above-the-knee skirt and a tank top, so any hidden contraband would have been easily visible through her clothing.

41. Further, Ms. Hosterman was strip searched during the booking process before she had intermingled with the general jail population, and she was left alone in a holding cell after the strip search.

42. While Defendants Cather, Andrade Aguilera, and Vanover began to forcibly strip search the handcuffed Plaintiff, Officer Simpson and another male SPD Officer, Officer Sexton, *stood just feet away watching*.

43. First, DO Vanover held Ms. Hosterman's lower legs, DO Andrade Aguilera held her neck and upper body, and DO Cather removed her socks, skirt, and underwear.

44. Ms. Hosterman alternated between crying and questioning why the Defendants were subjecting her to such an intrusive, humiliating strip search.

45. Andrade Aguilera and Cather then began removing Plaintiff's jewelry while Vanover continued to hold down her legs. During this time, Ms. Hosterman was naked other than her tank top.

46. DO Cather had some trouble removing Plaintiff's rings from her fingers, so she switched positions with DO Vanover. Cather held Plaintiff's ankles while Vanover attempted to remove her rings from her fingers.

47. Vanover could not get one of the rings off, so another officer brought lotion to the cell. The DOs applied lotion to Plaintiff's hands and were able to remove the ring.

48. The DOs then told Ms. Hosterman they were going to take her top off.

49. Ms. Hosterman cried and pleaded with the officers not to remove her top.

50. She sobbed and screamed "NO" as DOs Vanover (male) and Cather pulled her tank top down her torso and lower body while Officer Simpson (male) held down her legs.

51. Once the five officers finished completely stripping Ms. Hosterman down, Vanover, Cather, Andrade Aguilera, Simpson, and Sexton left her alone in the holding cell, lying face down on the cold bench completely naked and hysterically crying.

52. The violently intrusive, completely unnecessary strip search lasted approximately eight (8) minutes.

53. SPD Operations Captain Royce Stephens stood in the doorway of the cell and oversaw the entirety of the unconstitutional strip search.

54. Captain Stephens was, at all pertinent times, the supervisor of – at least – Officers Simpson and Sexton.

55. Upon information and belief, the unconstitutional strip search of Ms. Hosterman was consistent with longstanding policies, practices, and/or customs of the Jail/City of Stillwater.

56. Upon information and belief, the City/Jail routinely strip search female detainees without reasonable suspicion or probable cause.

57. The City/Jail also have a policy, practice, and/or custom of allowing male DOs conduct strip searches of female detainees, like Ms. Hosterman, and/or allowing male DOs to watch other DOs strip search female detainees.

58. Additionally, the City/Jail have a policy, practice, and/or custom of conducting strip searches on female detainees, like Ms. Hosterman, who verbally criticize them or whom they perceive to be uncooperative in some way.

59. As a direct and proximate result of the Defendants' conduct, actions, and/or inactions the Plaintiff has suffered personal injuries, medical expenses, pain and suffering, mental anguish, embarrassment, and humiliation.

**CAUSE OF ACTION**
**VIOLATION OF THE FOURTH/FOURTEENTH AMENDMENTS**
**TO THE CONSTITUTION OF THE UNITED STATES**

**(42 U.S.C. § 1983)**

### A. UNDERLYING VIOLATIONS

- **EXCESSIVE FORCE**

60. Plaintiff incorporates the allegations set forth in paragraphs 1 through 59, as if fully set forth herein.

61. At the time of the complained of events, Ms. Hosterman had a clearly established constitutional right under the Fourth Amendment to be secure in her person and free from objectively unreasonable seizure through excessive force to injure her and her bodily integrity.

62. Any reasonable officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

63. In the totality of the circumstances, at the time that Officers Simpson and Luginbill used violent force on Ms. Hosterman, prior to her arrest, Ms. Hosterman was: 1) unarmed; 2) not fleeing; 3) not actively resisting; and 4) posed no threat to herself, the officers, or anyone else.

64. The uses of violent force by Officers Simpson and Luginbill, prior to Plaintiff's arrest, under the circumstances described herein were excessive and objectively unreasonable.

65. Officers Simpson and Luginbill applied objectively unreasonable and excessive physical force on Plaintiff, thereby causing her serious bodily injures, as well as mental pain and anguish.

66. As a direct proximate result of Officers Simpson and Luginbill's unlawful conduct, Ms. Hosterman has suffered actual physical injuries, mental and physical pain and suffering and other damages and losses as described herein entitling her to recover compensatory and special damages in amounts to be determined at trial.

- **UNLAWFUL STRIP SEARCH**

67. When Plaintiff was taken into the care and custody of the Jail/SPD/City a special relationship was created whereby an affirmative duty existed to ensure the protection, safety, and well-being of Plaintiff.  Such duty existed at the time Plaintiff was taken into custody and extended through the entire time until she was released.

68. At the time of the complained of events, Ms. Hosterman had a clearly established right to bodily integrity.

69. No reasonable suspicion existed that Plaintiff possessed any type of contraband or drugs on her person.  Despite no reasonable suspicion existing, Defendants demanded that Plaintiff submit to a strip search.

70. The unwarranted, intrusive, and violent strip search, committed by Defendants Vanover (male), Cather, Aguilera Andrade, and Simpson (male), violated Plaintiff's Fourth and/or Fourteenth Amendment rights.

71. Further, the unlawful strip search was conducted in plain view of other male officers, such as Officer Sexton, which violated Plaintiff's clearly established Fourth and/or Fourteenth Amendment rights.

72. Officer Sexton (male) and Captain Stephens' (male) close proximity to and viewing of the unconstitutional strip search violated Ms. Hosterman's Fourth Amendment right to

privacy. *See, e.g., Hayes v. Marriott,* 70 F.3d 1144, 1146-47 (10th Cir. 1995); *Levoy v. Mills,* 788 F.2d 1437, 1439 (10th Cir. 1986).

73. As a proximate cause of these violations of Plaintiff's federally protected rights, Plaintiff endured pain, suffering, mental pain and anguish, humiliation, embarrassment, and the damages sought herein.

### B. SUPERVISORY LIABILITY (CAPTAIN STEPHENS)

74. Plaintiff incorporates the allegations set forth in paragraphs 1 through 73, as if fully set forth herein.

75. Captain Stephens supervised the entire Operations Unit of the SPD, which included Officers Simpson and Sexton.

76. Captain Stephens is liable under a theory of supervisory liability for his oversight of the unconstitutional search and his violation of Plaintiff's Fourth Amendment rights, i.e. his personal involvement in the constitutional violations.

77. As a proximate cause of these violations of Plaintiff's federally protected rights, Plaintiff endured pain, suffering, mental pain and anguish, humiliation, embarrassment, and the damages sought herein.

### C. MUNICIPAL LIABILITY (CITY OF STILLWATER)

78. Plaintiff incorporates the allegations set forth in paragraphs 1 through 77, as if fully set forth herein.

79. The aforementioned underlying violation of Plaintiff's Constitutional right to be free from excessive use of force is causally connected with official policies and/or customs which the City of Stillwater promulgated, created, implemented and/or possessed responsibility

for.

80. Prior to Plaintiff being arrested and taken into custody of the City, the City failed to:

        a)  Create, implement, and enforce proper policies and procedures relating to the use of force on detainees and arrestees, especially those like Ms. Hosterman who are unarmed, not resisting, and not a danger to the safety of themselves, other offiers, or anyone else;

        b)  Provide proper and adequate training and supervision to SPD Officers, including but not limited to Officers Simpson and Luginbill; and

        c)  Create, implement, and enforce policies relating to the use of excessive force.

81. The City knew and/or reasonably should have known that those arrested by and taken into custody by the SPD were subjected to and/or unreasonably at the risk of being subjected to excessive force and danger.

82. The City knew and/or reasonably should have known that its training with respect to the use of force was inadequate and substantially certain to result in constitutional violations.

83. Upon information and belief, the City had knowledge of other arrestees' verifiable claims of being subjected to excessive force and danger by SPD officers.

84. The City failed to take reasonable measures to alleviate the risks of harm faced by arrestees/detainees like Ms. Hosterman.

85. The City, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their

known and obvious inadequacies and dangers; has been deliberately indifferent to inmates', including Plaintiff's, health and safety.

86. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Ms. Hosterman suffered injuries and damages as alleged herein.

87. Additionally, prior to being taken to the Jail by Officer Simpson, the City failed to adequately train and supervise its employees, including DOs Vanover, Cather, and Aguilera Andrade, and Officer Simpson, regarding strip searching detainees.

88. The City failed to train its officers to: 1) require reasonable suspicion or probable cause prior to strip searching inmates who would not have any contact with general population at the Jail; 2) only have female DOs strip search female inmates; and 3) prohibit male DOs/Officers from conducting or watching female inmates get strip searched.

89. The City knew and/or reasonably should have known that those taken into custody by the SPD were subjected to and/or unreasonably at the risk of being subjected to unconstitutional strip searches.

90. The City knew and/or reasonably should have known that its training with respect to strip searches was inadequate and substantially certain to result in constitutional violations.

91. Upon information and belief, the City had knowledge of other detainees' verifiable claims of being subjected to unconstitutional strip searches, like the one Ms. Hosterman was forced to endure, by SPD officers.

92. The City failed to take reasonable measures to alleviate the risks of harm faced by arrestees/detainees like Ms. Hosterman.

93. The City, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to inmates', including Plaintiff's, health and safety.

94. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Ms. Hosterman suffered injuries and damages as alleged herein.

WHEREFORE, based on the foregoing, Plaintiff prays this Court grant the relief sought, including but not limited to actual and compensatory damages, and punitive damages, in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

/s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
Smolen & Roytman
701 South Cincinnati Avenue
Tulsa, OK 74119
(918) 585-2667
(918) 585-2669 Fax
danielsmolen@ssrok.com
bobblakemore@ssrok.com
bryonhelm@ssrok.com